Good morning, Your Honors. May it please the Court, my name is Joseph Boyd, and I'm appearing on behalf of the petitioner Luis Alejandro Martinez-Leiva. Your Honors, to start this argument, I'd like to use an allegory or an analogy. And I want to state some facts that to the common layperson seem rather straightforward. The first one is that all wines are alcoholic beverages. To a common layperson, that's true. I'm not asking you to be vintners or wine experts on this, but to a normal person, that is true. The second one is that all wines are made from grape juice. Again, to a normal person, that is a true statement. However, if you were to take the flip of each of those statements, or the reverse of those statements, that is not true. All alcoholic beverages are not wines. I'm a good Mormon boy, I don't drink, and I myself know that there's beers, there's hard liquors, even NyQuil might be considered an alcoholic beverage. Those are not wines. Likewise, not all grape juices are wines. I enjoy a good glass of grape juice, and I know that that's not... that doesn't contain alcohol, it's not wine, and it's not an alcoholic beverage. That analogy applies to this case here. Mr. Martinez-Leyva pled guilty to a violation of California Insurance Code Section 187.1.4. An element of that crime is that he stated a fraudulent or a knowingly false statement. In other words, if we were to apply our analogy to it, it would be the same as saying you are guilty of this felony if you drink wine or any other grape juice. What's the difference between a fraudulent statement and a knowingly false statement used to obtain money to which you are not entitled? Your Honor, I'm not sure... Or is there one? Your Honor, I'm not sure if there is a difference between fraudulent or knowingly false. What I do know is that the State Legislature was trying to be as broad as it possibly could so that it could catch as many people as it could for violating this crime. If fraudulent and knowingly false were exactly the same, then the State Legislature is merely being redundant in there. I've never read a redundant statute in my life. Well, Your Honor, I... So I come back to the question. What's the difference between fraudulent and knowingly false statement made with an intent to retain money to which you're not entitled? Well, Your Honor, all I can say is that the difference might be in the level of the intent and how... It sounds like we've got knowingly false for the one that you're trying to rely on. Well, knowingly false could contain a lesser level of intent than fraud. Let me ask you this. There is that possibility. We don't know. There is no case law to differentiate that. Let me back up because I had trouble getting my footing in this case. We've got one conclusion in the administrative agency that there was an aggravated felony because the amount was above a certain amount. And we've got another conclusion that there were two convictions involving moral turpitude. Now, in order for you to prevail, do you need to defeat both of those? How's that? I had trouble getting that into a relationship. The relationship, Your Honor, has to do with the violation or the conviction of two crimes of moral turpitude. And because moral turpitude is such a vague and ambiguous statement, there's numerous definitions out there. I understand that, but what I'm after is what happens if we were to agree with you that we, under the modified categorical approach, that these are not crimes of moral turpitude? What happens? If they are not crimes of moral turpitude, then neither would they be aggravated felonies because, by definition, the aggravated felony is a crime of moral turpitude. And that's where the aggravated felony comes into this in the first place. So the aggravated felony is moral turpitude with an amount in excess of whatever that amount is? The aggravated felony simply is one of the things that would constitute moral turpitude. Just like wine is an alcoholic beverage, aggravated felony is a crime of moral turpitude, and that's why aggravated felony is an element of this. That doesn't seem right to me. So why are we fighting about whether or not the amount of loss was above whatever the amount is, $10,000? That was an issue brought up by the respondents in this case. The truth of the matter is the amount is an element to the crime of California Insurance Code Section 187.1.4. And that it needed to be both, both, fit the definition, I'm sorry, they needed to fit the element of having made a fraudulent or knowingly false statement, and it needed to be above the amount of $10,000 in order for it to be considered this crime. Which crime? The crime of violating Insurance Code Section 187.1.4. But we have two crimes, right? We have two separate crimes that form the basis for this appeal. I believe he pled guilty to just that one of 187.1.4. On two occasions. On two occasions, yes, that's correct. Once was in 1994, and that one is not in dispute. He was convicted of that. What's in dispute is the second one in 2005 when he pled guilty to Insurance Code 187.1.4. If the 1994 conviction by itself was sufficient to do the deportation, he would have been deported in 1994 or shortly thereafter. Rather, he was allowed to remain in the United States, and this did not come at issue until the conviction of the second crime of Insurance Code Section 187.1.4. And you need both crimes to support the deportation. That's correct, Your Honor. Two crimes of moral turpitude. That's correct. And so if one of those is not considered a crime of moral turpitude, then the deportation statute of the Section 272 of the Act would not apply, and he would not be under this consequence of being deported. And you're not complaining about the 94 conviction. You're saying that somehow the 2005 conviction to which you pled guilty does not involve moral turpitude. Is that what your argument is in a nutshell? Exactly, Your Honor. That's exactly it. The 1994 conviction is not in dispute here. It's simply the one from 2005, because the definition of a violation of that crime under California law is broader than the definition of a crime of moral turpitude under the Immigration and Nationalization Act. And because that definition is broader, then facts would need to be in evidence showing that he actually did commit acts that fell within the definition of the Immigration and Nationalization Act statute of 272 or the definition under Section 101. But because he pled guilty. Do you have any case law under California law as to what that knowingly false statement means, such that I could conclude that there have been convictions under this statute for non-fraudulent behavior? Your Honor, unfortunately, I don't. I don't have case law one way or the other. I have a statute that was written with two different terms in there, one that says fraudulent and one that says knowingly false. I don't have a case law that helps us interpret the statute. I mean, the Supreme Court has told us that you've got to have a realistic sense that the reading that somebody is advancing under the categorical approach is actually the way the statute is going to be applied. And you don't have a case that goes your way. It doesn't say you necessarily lose without a case, but you don't have one. I understand. Yes, Your Honor. We don't have one. I believe if we actually had a case in this, then perhaps the Immigration Board itself would have agreed with our side in making this determination. That's the very reason that we're here today. What's the difference, in your view, between the 94 conviction and the 2005 conviction? Because as I look at the abstract of judgment, they look almost identical to me. What's different between the two of them? The difference, Your Honor, is in the 94 conviction, he, if I remember correctly, he did not plead guilty to it. It was an actual conviction trial, and facts were presented into evidence showing that he did commit a crime of moral turpitude. There is no – Is the difference the amount? The second-crime offense, is it that you're contending that the second offense does not show that it's a crime over $10,000? Your Honor, there – in the second crime, we don't know the facts. There's nothing in the record showing the facts. So it could be the amount, but we don't know. All right. Are you saying that the second offense does not show that it's more than $10,000 and, therefore, what, doesn't qualify as a crime of moral turpitude? That could be it. That could be it. I'm not asking what it could be. Is that your argument? Well, my argument is, Your Honor, we don't know enough about the facts of the second crime in order to make a determination that it falls under a crime of moral turpitude. I don't know what he did. Are you arguing that we don't know that the amount of loss was in excess of $10,000 in the – for the 2005 conviction? I am arguing that – simply that – I can't remember if they specified the loss in the 2005 conviction. Well, they certainly specified the amount of restitution. Okay. If it's specified in the amount of restitution, then that might be there. But we don't know what else constituted the crime. We don't know exactly what he said. We don't know what facts were given in that. Well, I think we know that if he's convicted, even under your version of the statute, he's convicted of making a knowingly false statement, and he's asked to make restitution for one of the counts of $18,280.30, which is in excess of $10,000. So obviously he obtained some money based on the knowingly false statement. I'm having trouble figuring out why that isn't fraud. Simply because, Your Honor, knowingly false could be beyond fraud. It could be a lesser intent. It could be a lesser – a lesser crime. It may not fall under the definition of moral turpitude. We don't know. And because we don't know, we cannot just assume that he committed a crime of moral turpitude here. Your Honor, I see I've gone over, and so just to sum up, if I may sum up. If you do it in 30 seconds. Yes. Simply, we are at a point here, Your Honor, where we don't – or, Your Honors, where we don't know what he did. And because we don't know, we cannot use that to – to deport Mr. Martinez-Leyva. And so, therefore, the – the judgment of the Board of Immigration Appeals should be overturned. Thank you. Thank you. Counsel, can you help us out? What's the difference between fraudulent and knowingly false? Your Honor, I don't believe there is a difference. And as the Petitioner could not point to a way of distinguishing those two and explaining why one would be a crime of moral turpitude and the other would not, I don't believe there's any distinction between the two for purposes of establishing that this was indeed a crime of moral turpitude, other than in terms of the statute itself. Before I say that, there's something I would like to acknowledge in terms of the record and the – essentially the insufficiency of the documents of conviction in establishing the amount of loss. The 1994 documents, absent any question of restitution, the 1994 documents, the indictment and the abstract of judgment, the Petitioner was convicted of the three counts, and included in those three counts are the language about there being a $50,000 loss. However, the $50,000 loss is not part of the statute. It is a sentencing enhancement provision. The abstract of judgment does not indicate any enhancements having been applied. The abstract is on page 80 of the record. And so the fact that the Petitioner was convicted under those counts, I don't believe I can stand up and say that that establishes that the Petitioner was also convicted of the $50,000 loss. If this case were before Nijuan, and that is what the Board decided, the Board decided the case before Nijuan, under that preexisting law, I don't believe that the – again, I could argue that this evidence was sufficient. Because the Petitioner was ordered to pay restitution in amounts that were obviously exceeding $10,000, I do believe the record could be sufficient to establish the $10,000 loss. However, I have to acknowledge that the Board's decision was essentially under that pre-Nijuan jurisprudence. I've got the same question. It's a straightforward legal question, in a way. I mean, it appears to me that what the Petitioner wants here is eligibility for 212C. And the argument is, on your side, that he's not eligible. And he's not eligible, in your view, because? Because his original conviction – 212C is not available to an alien who's been convicted of two crimes of moral turpitude or to an alien who's been convicted of an aggravated felony. You know, you're speaking rapidly and mumbling again, just like the other day. My apologies, Your Honor. Well, slow down, articulate, and give me your answer again, please. 212C is not available to an alien who has committed two crimes of moral turpitude. Right. Or is it available to an alien who's been convicted of an aggravated felony? So in order for him to get 212C, he's got to show neither that he committed two crimes of moral turpitude not arising out of the same course of conduct, and he's got to show no aggravated felony. Correct. How does the $10,000 amount fit into the crime of moral turpitude? It does not fit into the crime of moral turpitude. That's what I thought. But I think I got a different answer from him. Yes. It's the $10,000. And what's the definition of aggravated felony that's operative here? It's INA 101-A42M1, and it's a crime involving fraud or deceit in which the loss to the victim exceeds $10,000. Again, that's the aggravated felony. Again, the $10,000 has nothing to do with the crime of moral turpitude. So if you can show that this is an aggravated felony, it is to say something involving fraud or deceit in which the loss is more than $10,000, his claim for eligibility for 212C is defeated. Correct. That's your argument? Correct. Yes. And at the hearing, was there any explanation to the immigrant or the petitioner as to the need to show $10,000? I don't believe there was any discussion as to the $10,000 issue, no. No. The immigration judge noted that the petitioner appeared to be ineligible for 212C relief, noted that the conviction appeared to be an aggravated felony. But I'm pretty sure there was no specific discussion as to the amount of loss. The petitioner could have shown he was eligible if he had shown that there was not a $10,000 amount. That's correct, yes. And nobody told him that at the hearing? I don't believe the immigration judge was under an obligation to do so, but no one told him. No one told him at the hearing what kind of evidence he would need in order to show that it was not a crime of moral turpitude. No, no. Again, I don't believe that was an obligation, but no, that was not. Why do you say it's not an obligation to tell the immigrant what he must show to prove it's not a crime of moral turpitude? Is there a case that says that? I don't have a case to say specifically. I don't believe there are, I'm not aware of any cases in those exact circumstances. There are cases involving, for example, eligibility for asylum where the alien appears to be eligible for some form of relief, that it's the obligation of the immigration judge to make the alien aware of that fact. However, especially in this context here where the immigration judge had not received an application for relief, the petitioner had not stated that he was seeking to apply for cancellation of removal or 212C. Essentially, the immigration judge was assessing these things for the alien who was proceeding pro se, but the immigration judge was analyzing his potential eligibility for relief on grounds that the petitioner had not himself raised. And again, there's no apparent of eligibility, no reason why he would apparently be eligible. Excuse me. There's no reason why it would apparently be a non-$10,000 loss, apparent from the record. I don't believe there's any regulation. I'm certain there's no regulation that the immigration judge is required to inform the alien as to these issues. And so, yes, I don't believe there's any case either way on that. Why are we required to conclude that the amount of loss is reflected in the amount of restitution required to be paid? Okay. Here, Your Honor, I would acknowledge that the board's decision was issued pre-Nissan, and so it was issued at a time when the board really couldn't look at restitution. However, restitution, so long as the statute itself requiring restitution or allowing for restitution, requires that the amount of restitution be no greater than the amount of actual loss, then restitution certainly could be sufficient to establish the total amount of loss. And is that true under California law? I'm not sure as to whether or not it's true under California law. I recommend you read Ferreira, which says it is. Okay. But, yes, so long as it's tied to the two, then it should be sufficient to establish the amount of loss. And I think the court's decision in Nijiwan, and I think this court's subsequent decision in Kawashima, certainly recognized that restitution could be sufficient to establish the total amount of loss. And so here, again, it was just that the amount of loss would be established by restitution here. Your opponent does not seem to be contesting the 94 conviction as satisfying one of the elements that would defeat his request. What do you say about his arguments with respect to the 2005? I'm somewhat confused by that in terms of it's the same statute that the Petitioner was convicted under. And so in either case, it's a crime of moral turpitude. The question of aggravated felony may be different in terms of the evidence that's the evidence of the amount of loss on the 94 conviction versus there really is no evidence as to the amount of loss in the 2005 conviction. The hurdle for you to get over is the amount of loss in the 2005 conviction. No, Your Honor, because the amount of loss is not relevant to the crime of moral turpitude issue. It's only relevant to the aggravated felony issue. And so you only need one of those crimes for the purposes of establishing that he was convicted of an aggravated felony. So as long as the 94 conviction establishes the amount of loss, then the Petitioner was convicted of an aggravated felony. It's not the 2005 conviction that constitutes the aggravated felony. Then does 2005 become irrelevant in your view? It's relevant for purposes of establishing that he was convicted of two crimes of moral turpitude. But moral turpitude, the crime of moral turpitude, two crimes of moral turpitude and aggravated felony are different analyses. But just to make sure I'm understanding your answer properly to Judge O'Hare, if you could convince us that he has been convicted of an aggravated felony as with respect under the 94 conviction, you win. Correct. You don't need to show in addition, in order to win, that he's been convicted of two crimes of moral turpitude. Correct. Correct. No further questions. I submit those comments. We wouldn't want to miss the opportunity. Come on up. I'm sorry. I was under the understanding that I wasn't allowed to rebuttal today. When in doubt, stand up. You can have a minute. Okay. Thank you, Your Honor. Can you respond to the last comment just made by your opponent? That is, all he needs to show, and all he has shown, and that's enough, is that the aggravated felony in 94, you lose. Your Honor, in response to that, first of all, if that were sufficient, then why wasn't he deported in 1994 or 1995? Well, that's not a good answer. The second part of that, then, Your Honor, is that aggravated felony falls under the definition in Section 101 of the Immigration and Nationalization Act. Aggravated felony falls under the definition of a crime of moral turpitude. And that's how this is brought into it. Not that you have to be convicted of one crime of aggravated felony. You have to be convicted of two crimes of moral turpitude, and an aggravated felony can be one of those crimes. And so they need both the 94 and the 2005 in order to satisfy that element. And that was my one minute. Thank you, Your Honor. Case disargued will be submitted.
judges: Zouhary, Reinhardt, Fletcher